## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RCN TELECOM SERVICES, INC.,<br>RCN-BECOCOM, LLC,<br>STARPOWER COMMUNICATIONS, LLC,<br>RCN TELECOM SERVICES OF<br>WASHINGTON, D.C., INC.,<br>RCN TELECOM SERVICES OF<br>MASSACHUSETTS, INC.,<br>RCN TELECOM SERVICES OF<br>PHILADELPHIA, INC.,<br>105 Carnegie Center<br>Princeton, NJ 08540,<br><br>RCN TELECOM SERVICES OF ILLINOIS,<br>LLC,<br>350 N. Orleans St., Suite 600<br>Chicago, IL 60654<br><br>        Plaintiffs,<br><br>        v.<br><br>AT&T CORP.,<br>1 AT&T Way<br>Bedminster, New Jersey 07921,<br><br>AT&T COMMUNICATIONS, INC.,<br>1 AT&T Way<br>Bedminster, New Jersey 07921,<br><br>AND DOES 1-20,<br><br>        Defendants. | CASE NO. 1:05cv01432<br><br>Judge Ellen Segal Huvelle<br><br>JURY TRIAL REQUESTED |

## ANSWER AND COUNTERCLAIMS

Defendants AT&T Corp. and AT&T Communications, Inc. (collectively "AT&T"), by

and through their attorneys, herein respond to the Complaint filed by Plaintiffs RCN Telecom

Services, Inc.; RCN-BecoCom, LLC; Starpower Communications, LLC; RCN Telecom Services

of Illinois, LLC; RCN Telecom Services of Philadelphia, Inc.; RCN Telecom Services of Massachusetts, Inc.; and RCN Telecom Services of Washington, D.C., Inc. (collectively "RCN" or "Plaintiffs").

As a preliminary matter, AT&T notes that RCN grounds its claims in this action in part upon the determinations made by the Federal Communications Commission ("FCC") and set forth in an Order released on February 23, 2005 in WC Docket No. 03-133 ("Prepaid Calling Card Order"). The FCC issued the Prepaid Calling Card Order in response to a petition AT&T filed seeking a declaratory ruling regarding regulation of its enhanced pre-paid calling card service ("enhanced pre-paid service"). AT&T has appealed the FCC's determinations in the Prepaid Calling Card Order to the United States Court of Appeals for the District of Columbia Circuit. AT&T maintains that, even if the Prepaid Calling Card Order is upheld on appeal, AT&T has no liability to RCN under any of the claims asserted in the Complaint. However, a ruling from the appeals court in AT&T's favor could foreclose the basis for, and thus warrant the dismissal of, RCN's claims to the extent they are based on the Prepaid Calling Card Order. Accordingly, AT&T asserts a global denial of the findings in the FCC's Prepaid Calling Card Order.

Any allegation not expressly admitted is denied. AT&T states as follows:

## NATURE OF THE ACTION

1.      This case involves AT&T's failure to pay legally required charges for its use of Plaintiffs' local network facilities to receive and complete long-distance calls. Whenever one of AT&T's long-distance customers makes a long-distance call to one of Plaintiffs' local telephone customers, AT&T uses the Plaintiffs' local facilities to complete, or "terminate," the AT&T long-distance call. Similarly, whenever one of AT&T's long-distance customers uses a local telephone line provided by Plaintiffs to place a long-distance call, AT&T uses the Plaintiffs' local facilities to "originate" the long-distance call. Pursuant to contracts and Plaintiffs' federal and state tariffs on file with the Federal Communications Commission ("FCC") and state regulatory authorities, AT&T is required to pay Plaintiffs for this "originating" and "terminating" "access" to Plaintiffs' local exchange facilities.

**ANSWER NO. 1:**     AT&T admits that RCN seeks in this case to recover charges from AT&T, but AT&T denies the remaining allegations in the first sentence of paragraph 1.  AT&T admits that, for many long distance calls, AT&T uses local facilities of local exchange carriers, like RCN, to terminate and/or originate such calls, but AT&T denies the remaining allegations in the second and third sentences of paragraph 2.  AT&T admits that tariffs filed with the FCC and state regulatory commissions typically state the terms and conditions on which local exchange companies like RCN offer services, but AT&T denies the remaining allegations in the last sentence of paragraph 1.

2.     Beginning in or around 2000 and continuing through the present, AT&T orchestrated and implemented at least two fraudulent schemes in an attempt to avoid Plaintiffs' "access charges" (along with access charges of numerous other carriers), as described herein.

**ANSWER NO. 2:**     Denied.

3.     The FCC has twice rejected AT&T's supposed bases for failing to pay access charges to local carriers such as Plaintiffs, in orders released in April 2004 and February 2005.[1] Rather than award damages, however, the FCC instructed carriers damaged by AT&T's violation of access charge requirements to seek recovery in court.

**ANSWER NO. 3:**     AT&T admits that the FCC released two orders in April 2004 and February 2005 that relate to AT&T's phone-to-phone Internet Protocol ("IP") telephone service and to AT&T's enhanced prepaid calling card services, but avers that the FCC's orders speak for themselves.  AT&T denies the remaining allegations in paragraph 3.

4.     Particularly in light of these FCC decisions, AT&T has no excuse for its failure to pay lawfully tariffed access charges.  Accordingly, Plaintiffs seek to recover the access charges that AT&T has unlawfully failed to pay and to enjoin AT&T from continuing its unlawful conduct.

---

[1]     *See Petition for a Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges*, WC Docket No. 02-361, Order, FCC 04-97 (Apr. 21, 2004) (*"FCC Access Charge Order"*), *and AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services,* WC Docket Nos. 03-313 and 05-68, Order and Notice of Proposed Rulemaking, FCC 05-41 (Feb. 23, 2005) (*"FCC AT&T Calling Card Access Charges Order"*).

**ANSWER NO. 4:**     AT&T admits that RCN alleges in this suit that it has suffered damages related to nonpayment of access charges.  AT&T denies the remaining allegations in paragraph 4.

## JURISDICTION AND VENUE

5.     This is in significant part a collection action for payments arising under section 203 of the Communications Act of 1934, 47 U.S.C. § 203, and Plaintiffs' interstate access tariffs filed thereunder.  This Court accordingly has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 47 U.S.C. § 207.  In addition, since AT&T is a common carrier, Plaintiffs' claims also arise under section 206 of the Communications Act of 1934, 47 U.S.C. § 206.  This Court has jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

**ANSWER NO. 5:**     AT&T admits that this Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1337 and 1367.  AT&T denies the remaining allegations in paragraph 5.

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b), as AT&T has agents and transacts business in this district.

**ANSWER NO. 6:**     Denied.

## ALLEGATIONS COMMON TO ALL COUNTS

## PARTIES

7.     All Plaintiffs are wholly-owned, ultimately, by RCN Corporation a Delaware corporation.

**ANSWER NO. 7:**     AT&T is without knowledge of the truth or falsity of the allegations in paragraph 7, and they are therefore denied.

8.     The principal place of business of RCN Telecom Services of Illinois, LLC is 350 N. Orleans St., Suite 600, Chicago, IL 60654.  The principal place of business of all other Plaintiffs is 105 Carnegie Center, Princeton, NJ 08540.

**ANSWER NO. 8:**     AT&T is without knowledge of the truth or falsity of the allegations in paragraph 8, and they are therefore denied.

9.      RCN Telecom Services, Inc. is a Pennsylvania corporation that provides telecommunications services in metropolitan areas in Pennsylvania (except for metropolitan Philadelphia), California, and New York. RCN Telecom Services Inc. is the successor in interest to all claims previously held by RCN Telecom Services of California, Inc.; RCN Telecom Services of New York, Inc.; RCN Telecom Services of Southeast New York, Inc.; and RCN Telecom Services of Pennsylvania, Inc. As a result of a pro forma reorganization in 2000, RCN Telecom Services Inc. assumed the operations, licenses and legal rights of these entities, without any change in ultimate ownership.

**ANSWER NO. 9:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 9, and they are therefore denied.

10.      RCN Telecom Services of Philadelphia, Inc. is a Pennsylvania corporation that provides telecommunications services in metropolitan Philadelphia, Pennsylvania.

**ANSWER NO. 10:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 10, and they are therefore denied.

11.      RCN Telecom Services of Massachusetts, Inc. is a Massachusetts corporation that is licensed to provide telecommunications services in Massachusetts. RCN Telecom Services of Massachusetts, Inc. is a subsidiary of RCN Telecom Services, Inc., and is the parent of RCN-BecoCom, LLC.

**ANSWER NO. 11:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 11, and they are therefore denied.

12.      RCN-BecoCom, LLC, is a Massachusetts limited liability company that provides telecommunications services in Massachusetts.

**ANSWER NO. 12:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 12, and they are therefore denied.

13.      RCN Telecom Services of Washington, D.C., Inc. is a District of Columbia corporation that is licensed to provide telecommunications services in the District of Columbia. RCN Telecom Services of Washington, D.C., Inc. is a subsidiary of RCN Telecom Services, Inc., and is the parent of Starpower Communications, LLC.

**ANSWER NO. 13:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 13, and they are therefore denied.

14. Starpower Communications, LLC, is a Delaware limited liability company that provides telecommunications services in Washington, D.C. and the surrounding metropolitan area, including communities in suburban Maryland and Northern Virginia.

**ANSWER NO. 14:** AT&T is without knowledge of the truth or falsity of the allegations in paragraph 14, and they are therefore denied.

15. RCN Telecom Services of Illinois, LLC, is an Illinois limited liability company that provides telecommunications services in the city of Chicago, Illinois, and surrounding areas. RCN Telecom Services of Illinois, LLC is the successor in interest to all claims previously held by RCN Telecom Services of Illinois, Inc., as it assumed the operations, licenses and legal rights of this former entity without any change in ultimate ownership.

**ANSWER NO. 15:** AT&T is without knowledge of the truth or falsity of the allegations in paragraph 15, and they are therefore denied.

16. AT&T Corp. is a New York corporation with its principal place of business at 1 AT&T Way, Bedminster, New Jersey, 07921. AT&T Corp. provides, among other things, telecommunications services throughout the United States, including in the District of Columbia. AT&T Corp. can be served with process by serving its registered agent for service of process: CT Corporation System, 1015 15th Street, N.W., Suite 1000, Washington, D.C. 20005.

**ANSWER NO. 16:** Admitted.

17. AT&T Communications, Inc. is a wholly owned subsidiary of AT&T Corp. AT&T Communications, Inc., with its principal place of business at 1 AT&T Way, Bedminster, New Jersey 07921, can be served with process by serving its registered agent for service of process: CT Corporation System, 1015 15th Street, N.W., Suite 1000, Washington, D.C. 20005.

**ANSWER NO. 17:** Admitted.

18. The true names and roles of defendants DOES 1-20, inclusive, are unknown to Plaintiffs, which accordingly sues those defendants by fictitious names. Plaintiffs believe and allege that each of the DOE defendants is legally responsible in some manner for the events alleged in this Complaint and the resulting injury and damages caused to Plaintiffs. Plaintiffs will amend the Complaint to reflect the true names and roles of the DOE defendants when Plaintiffs obtain that information.

**ANSWER NO. 18:** Denied.

19. AT&T Corp. and its affiliates listed above, which are collectively referred to as "AT&T" throughout this complaint, effectively operate as a single enterprise. AT&T has complete control and influence over these subsidiaries. This control and influence includes, among other things, all decisions regarding the services AT&T's subsidiaries provide, the facilities they use, the traffic sent over those facilities, the agreements into which they enter, and

the way they market and sell their service. AT&T coordinates and controls one overarching position concerning all of these issues from its corporate headquarters. AT&T and all of its subsidiaries also operate as a single integrated operation, under a nationwide brand. AT&T has used each of these subsidiaries, individually and collectively, as a subterfuge to assist AT&T in conducting and perpetuating fraud. In particular, AT&T has used these subsidiaries to conceal AT&T's interexchange traffic so that AT&T could avoid paying Plaintiffs' lawfully tariffed access charges. AT&T routed interexchange traffic over facilities that these subsidiaries had previously obtained for the express purpose of terminating primarily local traffic with Plaintiffs and other LECs. This enabled AT&T to disguise its interexchange traffic from Plaintiffs and other LECs, and, consequently, to avoid being billed access charges for this traffic. For the foregoing reasons, the subsidiaries listed above constitute alter egos of AT&T Corp.

**ANSWER NO. 19:**    Denied.

## BACKGROUND

### The Access Charge Regime

20.    This action centers on AT&T's non-payment for switched access charges owed to Plaintiffs in accordance with Plaintiffs' lawful tariffs and their contracts with AT&T. Access charges are the fees that long-distance carriers such as AT&T must pay local exchange carriers such as Plaintiffs to defray the costs associated with the use of local exchange facilities for originating and terminating long-distance calls. These switched access charges are established and mandated by federal and state regulations and tariffs as well as contracts, which are described in detail below.

**ANSWER NO. 20:**    AT&T admits that this suit concerns allegations of non-payment of

access charges, but denies that it has any liability for such access charges. AT&T further admits

that the rates at which local exchange carriers offer access services are generally found in tariffs

and, in some cases, are contained in agreed-upon contracts. AT&T denies the remaining

allegations in paragraph 20.

21.    Since the breakup of the Bell System in 1984, local exchange carriers ("LECs"), such as Plaintiffs, and long-distance carriers, such as AT&T, have played largely distinct roles in the telecommunications industry. LECs have primarily carried local calls – i.e., calls between end users located within local calling areas or exchanges. Long-distance carriers have traditionally carried calls between exchanges, on both an intrastate and interstate basis. This long-distance service is known as "interexchange" service.

**ANSWER NO. 21:**    AT&T admits that the Bell System was the subject of a consent

decree that became effective on or about January 1, 1984, and that, in many cases up until 1996,

local exchange carriers primarily carried local calls within an exchange and long distance carriers primarily carried long distance calls that traveled between exchanges. AT&T further admits that long-distance service is sometimes referred to as "interexchange" service. AT&T denies the remaining allegations of paragraph 21.

22.      In order to provide interexchange service, long-distance carriers such as AT&T typically establish one or more points of presence (POPs) within a given area. POPs are facilities that provide a point of interconnection between local exchange networks and interexchange networks. When a customer makes an interexchange call, that customer's local exchange carrier transports the call over the local exchange carrier's network to the POP of the long-distance carrier that the customer has selected (say, AT&T). The long-distance carrier then transports the call from the POP in the area where the calling party is located (i.e., where the call originates) to the POP in the area where the called party is located (i.e., where the call terminates). The called party's local exchange carrier then receives the call from the long-distance carrier, either directly or through an intermediary, and delivers it to the called party.

**ANSWER NO. 22:**   AT&T admits that the allegations of paragraph 22 are accurate, in a general sense, with respect to ordinary long-distance calls. AT&T denies that the allegations of paragraph 22 apply in every local exchange. AT&T denies, for example, that it has a point of presence in each local exchange.

23.      The transmission of an interexchange call from the calling party to a long-distance carrier's POP is known as "originating access." The transmission of an interexchange call from a long-distance carrier's POP to the called party is known as "terminating access."

**ANSWER NO. 23:**   AT&T admits that the allegations of paragraph 23 are accurate, in a general sense, with respect to ordinary long-distance calls.

24.      Federal and state tariffs (or, in the absence of a tariff, contracts between the carriers) dictate the appropriate originating and terminating access charges that apply to a given interexchange call, depending on whether the call is interstate or intrastate. If the call originates in one state and terminates in another, the access charges that apply are set forth in interstate tariffs filed with the FCC. If the call originates and terminates within the same state, the access charges that apply are set forth in intrastate tariffs filed with individual state regulatory commissions.

**ANSWER NO. 24:**   AT&T admits that the rates and other terms at which local exchange carriers offer access services are generally found in tariffs and, in some cases, are

contained in agreed-upon contracts. AT&T admits that intrastate calls are, as a general matter, subject to tariffs that are typically filed with state public utility commissions and that interstate calls are generally subject to tariffs typically filed with the FCC. AT&T denies the remaining allegations in paragraph 24.

25.    For historical and regulatory reasons beyond the scope of this Complaint, most LECs' intrastate access charges are often higher (in many cases, considerably so) than interstate access charges.

**ANSWER NO. 25:**    AT&T admits that the rates for intrastate access services offered by most local exchange carriers are often higher than the rates for interstate access services. AT&T denies the remaining allegations in paragraph 25.

26.    Local calls are subject to a different regulatory regime, called "reciprocal compensation." Under reciprocal compensation, the parties exchanging local traffic either agree on the rate at which the carriers bill each other for termination of each other's local traffic (typically much lower than access charges) or the parties assume a relative balance of traffic and agree to an arrangement termed "bill and keep" in which no payments are exchanged between the carriers; rather carriers recover the costs of terminating traffic from their own customers.

**ANSWER NO. 26:**    AT&T admits that local calls typically do not incur access charges. AT&T admits that compensation for the exchange of local calls between carriers can be subject to a variety of types of "reciprocal compensation" arrangements. AT&T denies the remaining allegations in paragraph 26.

27.    Plaintiffs own the switches used to provide to serve their customers. Thus, Plaintiffs will bill and collect access charges from long-distance carriers such as AT&T directly.

**ANSWER NO. 27:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 27, and they are therefore denied.

28.    Long-distance traffic destined for Plaintiffs' customers is delivered by the long-distance carrier, or another carrier acting on its behalf, to the network of the Incumbent Local Exchange Carrier (at a switch called an access tandem). This tandem switch then routes traffic bound for an RCN customer to RCN's switch, which then routes the calls to Plaintiffs' customers. RCN typically leases high capacity lines (called "trunks'), to connect its switch to the ILEC's tandem switch. RCN has specific trunk groups that are designated to carry long distance traffic to its switch for terminating to its customers.

**ANSWER NO. 28:**    AT&T admits that some local exchange carriers are not directly connected to interexchange carriers, and instead connect indirectly to interexchange carriers through the networks of incumbent local exchange carriers.  AT&T is without knowledge of the truth or falsity of the remaining allegations in paragraph 28, and they are therefore denied.

29.    Long distance carriers typically provide RCN with information that permits RCN to determine the jurisdictional nature of the call.  This information enables RCN to assess and bill the appropriate interstate and intrastate terminating access charges to the long-distance carrier.

**ANSWER NO. 29:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 29, and they are therefore denied.

<u>AT&T's Obligations to Pay Access Charges to RCN</u>

30.    During the entire relevant period, Plaintiffs have offered switched access charges pursuant to tariffs filed with the FCC (for interstate access services) and the respective state public utilities commissions in states where Plaintiffs operate as local exchange carriers (for switched intrastate access services).  The provisions of these tariffs are binding on AT&T and govern the rates, terms and conditions that RCN may offer switched access services.

**ANSWER NO. 30:**    AT&T admits that RCN has offered switched access services in tariffs filed with the FCC and with some state public utility commissions.  AT&T denies the remaining allegations in paragraph 30.

31.    In May 2000, RCN and AT&T entered into a contract ("Contract") that requires AT&T to pay each Plaintiff's respective access charges on a going forward basis.  As part of the Contract, the parties agreed as to the rates that AT&T would pay RCN for switched access services after May 8, 2000.

**ANSWER NO. 31:**    AT&T admits that there is a contract between AT&T Corp. and RCN Telecom Holding Company with an effective date of May 8, 2000, but avers that the contract speaks for itself.  AT&T denies the remaining allegations in paragraph 31.

<u>AT&T's Evasion of Interstate and Intrastate Access Charges</u>

32.    Beginning in or around 2000, AT&T began disguising long-distance interexchange calls it delivered to Plaintiffs and other LECs, thereby preventing Plaintiffs from detecting the interexchange nature of the calls and enabling AT&T to avoid being billed for the

lawfully tariffed access charges that apply to such calls. For example, AT&T repeatedly disguised interstate and intrastate long-distance calls as local calls, and in other cases disguised intrastate long-distance calls as interstate. AT&T disguised calls by concealing, changing, causing to be concealed or changed, or otherwise misrepresenting the originating telephone number transmitted with the call, and by materially misrepresenting other information provided to Plaintiffs. The information AT&T concealed, changed and/or misrepresented is information that is essential to the Plaintiffs' ability to identify whether calls are interexchange in nature and, if so, whether they are local, interstate long-distance or intrastate long-distance calls.

**ANSWER NO. 32:**    Denied.

33.    By design, AT&T's improper call-termination scheme prevented Plaintiffs from distinguishing between local traffic and interexchange traffic. Plaintiffs were thus unable to bill for (or even to detect or measure) a great deal of interexchange voice traffic that AT&T delivered to Plaintiffs for termination. Therefore, Plaintiffs could not reasonably have been expected to determine AT&T's actual use of their access services and bill AT&T the appropriate charge.

**ANSWER NO. 33:**    Denied.

34.    AT&T disguised, as described in paragraph 26 above, a substantial portion of its long-distance calls, apparently based upon the incorrect premise that the calls were not subject to access charges because they used Internet Protocol ("IP") for an intermediate portion of its transmission between AT&T POPs.

**ANSWER NO. 34:**    Denied.

35.    IP is a technology that was originally developed for use in connection with the public Internet. Because IP is so efficient at carrying traffic, however, many carriers, including AT&T, have been implementing it on their private networks as well. And, although IP was originally developed to carry data traffic generated by computers, technological advances over the past several years have made it possible to use IP to transmit ordinary voice traffic as well.

**ANSWER NO. 35:**    AT&T admits that it has used Internet Protocol on its network.

AT&T further admits that IP can be used to transmit both data and voice traffic. AT&T denies

the remaining allegations in paragraph 35.

36.    In this respect, IP technology is simply the latest in an array of transmission technologies used to transmit ordinary telephone calls from one point to another. Some carriers use microwave transmission, others use fiber-optic cables, others use satellites, and still others continue to use the copper wires that have been in use for decades. As the FCC has recognized, the mere choice of transmission technology makes no difference to the regulatory classification of a telephone call or the applicability of access charges. Instead, under the Communications Act of 1934, 47 U.S.C. § 151 et seq., "telecommunications" is defined as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received" 47 U.S.C. § 153(43).

Thus, under the Act and the FCC's long-standing rules, provided that the call begins and ends as an ordinary, circuit-switched telephone call, the technology a carrier elects to use to facilitate its transmission is irrelevant for purposes of access charges.

**ANSWER NO. 36:**    AT&T avers that the orders of the FCC and the text of the Communications Act of 1934 speak for themselves, and no response is required.  Further, AT&T avers that the last sentence of paragraph 36 states a legal conclusion, which is for the Court, and to which no response is required.  AT&T denies the remaining allegations in paragraph 36.

37.    In order for a long-distance carrier to use an Internet backbone in the transmission of ordinary long-distance voice traffic, it must perform what is known as a "protocol conversion" on both ends of the call.  For example, in the case of an AT&T long-distance subscriber in New York making a call to Washington, DC, the call (1) originates on the network of a local exchange carrier in New York as an ordinary telephone call, (2) is handed off to AT&T in that format, (3) is converted by AT&T into the IP format, (4) is transmitted by AT&T in the IP format on its Internet backbone for some distance between New York and Washington (although not necessarily the entire distance), (5) is converted back into an ordinary telephone call by AT&T or a party acting on its behalf, (6) is handed to the local exchange carrier in Washington in that format, and (7) is delivered to the called party in Washington by the local carrier.

**ANSWER NO. 37:**    Denied.

38.    In this scenario, neither the calling party in New York nor the called party in Washington has any idea that their call has been converted to the IP format in the middle.  The transmission of the call, between or among points specified by the user, is dialed and received in the same manner as any other long-distance call, and AT&T's service offers nothing more than the transmission of information of the user's choosing, without a net change in the form or content of the information as sent and received.  In fact, although AT&T has been performing these protocol conversions and using IP to transmit an increasing portion of its customers' long-distance telephone calls, it has continued to bill its customers for these calls as ordinary long-distance calls, it has not informed them that these protocol conversions were taking place, and it has not stopped paying LECs the originating access charges that apply to these calls.  By paying LECs the originating access charges on these calls, AT&T acknowledged that they were switched access calls.

**ANSWER NO. 38:**    Denied.

39.    AT&T did, however, avoid paying terminating access charges for calls that it transmits using IP, by disguising those calls as local calls on the terminating end.  As noted above, a long-distance call that AT&T transmits using IP is no different than a long-distance call using any of the other transmission technologies noted above, and the terminating LEC performs the same functions over the same facilities to deliver that call to the called party.  In fact, the terminating LEC ordinarily would not even be aware of whether an interexchange call it receives

from AT&T is transmitted using IP within AT&T's network, provided it is converted back into an ordinary telephone call before it is delivered to the terminating LEC.

**ANSWER NO. 39:**    Denied.

40.    In addition to its misclassification of calls using IP, AT&T, as described in paragraph 26 above, disguised certain intrastate (in-state) prepaid calling card long-distance calls as interstate calls (which are in most cases subject to lower access charges), when in fact the calling and called parties were located in the same state, purportedly based on the incorrect premise that the calls were not subject to intrastate access charges because AT&T routed the call through its 8YY (i.e., 800-number) platform in another state.  In other cases, AT&T disguised interstate and intrastate prepaid calling card calls so at to avoid being billed for access charges altogether.

**ANSWER NO. 40:**    Denied.

41.    AT&T later attempted to justify this ruse by claiming that when a customer using such a card places a call to someone in the same state, the call would be considered interstate because it consists of two calls, one between the caller and the AT&T platform delivering the recorded advertisement and one between that platform and the called party, and that at least one of those "calls" is interstate.

**ANSWER NO. 41:**    With respect to AT&T's enhanced prepaid calling card service,

AT&T admits that its service permitted cardholders to use AT&T's telecommunications network

to make long distance calls and that, before placing a long distance call, cardholders must first

access AT&T's prepaid calling card platform through a toll-free number.  AT&T further avers

that the prepaid calling card platform provides non-call information to the card holder and

performs other functions besides routing the call.  AT&T denies the remaining allegations in

paragraph 41.

42.    AT&T pursued both the IP and calling card access-avoidance schemes surreptitiously for several years.  Then, in the wake of several criminal prosecutions of companies that had unlawfully evaded lawfully tariffed access charges,[2] AT&T sought to cloak

---

[2]    In 2001, the Department of Justice prosecuted NTS Communications and two of its officers for defrauding Ameritech and AT&T's local service affiliate by operating long-distance companies which "concealed the true nature" of the long-distance traffic they delivered for termination, and by characterizing that traffic instead as local. *See* Indictment, *United States v. Lacy Ward, et al.*, Case No. IPOI-CR-0079-01-04-B/F (S.D. Ind, filed Jul. 11, 2001).  The defendants pleaded guilty to conspiracy to commit wire fraud and were sentenced to prison and restitution for "perpetrating a scheme that defrauded Southwestern Bell Telephone of millions of

its behavior with the imprimatur of the FCC. Specifically, in October 2002, AT&T filed a petition with the FCC requesting that the FCC declare that a telephone call converted to IP, carried on an Internet backbone, and then converted back to an ordinary telephone call for termination was exempt from access charges.[3] Then, in May 2003, AT&T filed another petition with the FCC requesting that the FCC declare that AT&T's prepaid calling card services as described above be deemed jurisdictionally interstate and therefore exempt from intrastate access charges.

**ANSWER NO. 42:** AT&T admits that it filed a petition with the FCC in October, 2002, regarding AT&T's IP services. AT&T also admits that it filed a petition with the FCC in May, 2003, regarding AT&T's enhanced pre-paid calling card services. AT&T otherwise denies the allegations in paragraph 42.

43. AT&T did not, however, wait for the FCC to rule on its petitions. Instead, even while its petitions were pending and unbeknownst to Plaintiffs, AT&T continued its practice of improperly terminating long-distance calls to Plaintiffs and other LECs in a manner designed to evade the Plaintiffs' and other LECs' detection of the interexchange, and interstate and intrastate, nature of the calls and to avoid access charges on massive amounts of traffic.

**ANSWER NO. 43:** Denied.

44. Ultimately, the FCC unanimously rejected both of AT&T's petitions. First, on April 21, 2004, the FCC declared that, under its longstanding existing rules, the conversion of ordinary telephone traffic to IP and back again has no effect on the regulatory classification of the telephone call. The FCC further held that AT&T is required to pay access charges for all interexchange voice traffic that originates and terminates over circuit-switched local exchange networks, including traffic that is converted to IP and transmitted over AT&T's Internet backbone at some point in the middle before being reconverted to be delivered to a local carrier. The FCC accordingly authorized local telephone companies to pursue collection actions such as this one against AT&T for access charges that AT&T had failed to pay based on its unlawful scheme.

---

dollars in [access] fees." Press Release, *Long Distance Provider NTS Communications, Inc. and Two Executives are Charged with Defrauding Southwestern Bell Telephone of Millions in Long Distance Usage Fees, U.S. Dep't of Justice*, Feb. 28, 2002.

[3]     *See Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges*, WC Docket No. 02-361 (FCC filed Oct. 18, 2002).

**ANSWER NO. 44:**    AT&T admits that the FCC issued two orders relating to AT&T's

IP telephony service and AT&T's prepaid calling card services, but avers that the orders speak

for themselves.  AT&T denies the remaining allegations in paragraph 44.

45.    Then, on February 23, 2005, the FCC held that AT&T's prepaid calling card calls
between callers located in the same state are intrastate telecommunications services subject to
intrastate access charges, under the same "end to end" analysis that the Commission had applied
to other calling card and other telecommunications services for many years.  As in its April 21,
2004 order, the FCC again instructed local exchange carriers that claims for unpaid access
charges be filed with an appropriate court or state commission rather than brought to the FCC.

**ANSWER NO. 45:**    AT&T admits that the FCC issued an order on February 23, 2005,

relating to AT&T's prepaid calling card services, but avers that the order speaks for itself.

AT&T denies the remaining allegations in paragraph 45.

46.    Until it filed the petitions with the FCC described in paragraph 36, above, AT&T
fraudulently concealed its schemes to avoid access charges.  Even when it filed these petitions,
AT&T fraudulently misrepresented the extent to which it was engaging in such schemes.

**ANSWER NO. 46:**    Denied.

47.    Even after these FCC decisions, AT&T has continued to engage in practices to
prevent Plaintiffs' detection of the interexchange, and interstate and intrastate, nature of calls and
thereby attempt to avoid access charges, but apparently on a lesser scale.

**ANSWER NO. 47:**    Denied.

48.    Particularly in light of these FCC's decisions, AT&T has no excuse for continuing
its scheme and its failure to pay Plaintiffs access charges for long-distance calls in accordance
with Plaintiffs' state and federal tariffs, and the Contract.

**ANSWER NO. 48:**    Denied.


**COUNT I**
(BREACH OF FEDERAL TARIFFS)

49.    Plaintiffs incorporate by reference as though fully set forth herein the allegations
of preceding paragraphs of this Complaint.

**ANSWER NO. 49:**    AT&T hereby incorporates by reference, as though fully set forth

herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

50.     For the reasons set forth above and in the *FCC Access Charge Order and FCC AT&T Calling Card Access Charges Order*, pursuant to Plaintiffs' lawful Federal Tariffs, AT&T is liable to Plaintiffs for its failure to pay interstate access charges on interstate interexchange traffic that AT&T delivered to Plaintiffs for termination.

**ANSWER NO. 50:**    Denied.

51.     RCN's rates and terms for interstate access charges for long distance calls are set forth in the following tariffs on file with the FCC: RCN Telecom Services of Illinois, LLC F.C.C. Tariff No. 1 (on and after August 1, 2003); RCN Telecom Services of Illinois, Inc. F.C.C. Tariff No. 2 (prior to August 1, 2003); Starpower Communications, LLC F.C.C. Tariff No. 1; and RCN Telecom Services, Inc. Tariff F.C.C. No. 1.  The interstate tariff of RCN Telecom Services, Inc., FCC Tariff No. 1, also covers the interstate tariffed switched access offerings for all Plaintiffs not otherwise referenced in this paragraph.

**ANSWER NO. 51:**    AT&T admits that tariffs contain the rates and other terms on which RCN offers certain of its access services.  AT&T denies the remaining allegations in paragraph 51.

52.     Plaintiffs' federal tariffs provide, among other things, that AT&T must pay Plaintiffs' tariffed access charges for both originating access and terminating access.

**ANSWER NO. 52:**    AT&T avers that paragraph 52 states a legal conclusion, and that conclusions of law are for the Court.  Further, the tariffs speak for themselves and no response is required.   Any remaining allegations in paragraph 52 are denied.

53.     Plaintiffs fully performed their obligations under their federal tariffs, except for those they were prevented from performing, those that they were excused from performing, or those that were waived by AT&T's misconduct as alleged herein.

**ANSWER NO. 53:**    Denied.

54.     AT&T failed to pay Plaintiffs for interstate switched access services in accordance with the federal tariffs.

**ANSWER NO. 54:**    Denied.

55.     AT&T materially violated Plaintiffs' federal tariffs by failing to pay the tariffed rates for the services it used.

**ANSWER NO. 55:**    Denied.

56.     Plaintiffs have been damaged in an amount to be determined at trial.

**ANSWER NO. 56:**    Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## COUNT II
### (BREACH OF STATE TARIFFS)

57.    Plaintiffs incorporate by reference as though fully set forth herein the allegations of preceding paragraphs of this Complaint.

**ANSWER NO. 57:**    AT&T hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

58.    For the reasons set forth above and in the *FCC Access Charge Order and FCC AT&T Calling Card Access Charges Order*, AT&T is liable to Plaintiffs for its failure to pay intrastate access charges on intrastate interexchange traffic that AT&T delivered to Plaintiffs for termination.

**ANSWER NO. 58:**    Denied.

59.    RCN's rates and terms for intrastate access charges for long distance calls within California are set forth in its tariff RCN Telecom Services, Inc. Cal. P.U.C. No. 2.  Prior to November 22, 2000, this tariff was on file as RCN Telecom Services of California, Inc. P.U.C. No. 2.

**ANSWER NO. 59:**    AT&T admits that tariffs contain the rates and other terms on which RCN offers certain access services.  AT&T denies the remaining allegations in paragraph 59.

60.    RCN's rates and terms for access charges for long distance calls within Massachusetts are set forth in its tariff RCN-BecoCom, Inc. Ma. D.P.U. No. 4.

**ANSWER NO. 60:**    AT&T admits that tariffs contain the rates and other terms on which RCN offers certain access services.  AT&T denies the remaining allegations in paragraph 60.

61.    RCN's rates and terms for intrastate access charges for long distance calls within Illinois are set forth in its tariff RCN Telecom Services of Illinois, LLC I.C.C. Tariff No. 2. Prior to June 13, 2003, the rates and terms were set forth in tariff RCN Telecom Services of Illinois, Inc. I.C.C. Tariff No. 2.

**ANSWER NO. 61:**    AT&T admits that tariffs contain the rates and other terms on which RCN offers certain access services.    AT&T denies the remaining allegations in paragraph 61.

62.    RCN's rates and terms for intrastate access charges for long distance calls within York are set forth in its tariff RCN Telecom Services, Inc. P.S.C. No. 7 Telephone.  Prior to October 23, 2003, the rates and terms were set forth in tariffs RCN Telecom Services of New York, Inc. P.S.C. No. 7 Telephone and RCN Telecom Services of Southeast New York, Inc. P.S.C. No. 7 Telephone.

**ANSWER NO. 62:**    AT&T admits that tariffs contain the rates and other terms on which RCN offers certain access services.    AT&T denies the remaining allegations in paragraph 62.

63.    RCN's rates and terms for intrastate access charges for long distance calls within Pennsylvania are set forth in its tariffs RCN Telecom Services, Inc. Pa. PUC No. 4 and RCN Telecom Services of Philadelphia Inc. PA PUC No. 4.  Prior to January 12, 2001, the rates and charges that are now set forth in RCN Telecom Services, Inc. PA PUC No. 4 were on file as RCN Telecom Services of Pennsylvania, Inc. PA PUC No. 4.

**ANSWER NO. 63:**    AT&T admits that tariffs contain the rates and other terms on which RCN offers certain access services.    AT&T denies the remaining allegations in paragraph 63.

64.    RCN's rates and terms for intrastate access charges for long distance calls within Maryland are set forth in its tariff Starpower Communications, LLC P.S.C. Md. No. 2 – Telephone.

**ANSWER NO. 64:**    AT&T admits that tariffs contain the rates and other terms on which RCN offers certain access services.    AT&T denies the remaining allegations in paragraph 64.

65.    RCN's rates and terms for intrastate access charges for long distance calls within Virginia are set forth in its tariff Starpower Communications, LLC S.C.C. Va. No. 3.

**ANSWER NO. 65:** AT&T admits that tariffs contain the rates and other terms on which RCN offers certain access services. AT&T denies the remaining allegations in paragraph 65.

66. Each of the tariffs referenced above provides, among other things, that AT&T must pay Plaintiffs' intrastate access charges for both originating access and terminating access.

**ANSWER NO. 66:** AT&T avers that paragraph 66 states a legal conclusion, and that conclusions of law are for the Court. Further, the tariffs speak for themselves and no response is required. Any remaining allegations in paragraph 66 are denied.

67. Plaintiffs fully performed their obligations under each of the tariffs referenced above, except for those they were prevented from performing, those that they were excused from performing, or those that were waived by AT&T's misconduct as alleged herein.

**ANSWER NO. 67:** Denied.

68. AT&T materially violated the tariffs referenced above by failing to pay the tariffed rates for the services it used.

**ANSWER NO. 68:** Denied.

69. Plaintiffs have been damaged in an amount to be determined at trial

**ANSWER NO. 69:** Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## COUNT III (In the Alternative)
(BREACH OF CONTRACTS)

70. Plaintiffs incorporate by reference as though fully set forth herein the allegations of preceding paragraphs of this Complaint.

**ANSWER NO. 70:** AT&T hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

71. AT&T is obligated to pay Plaintiffs for interstate and intrastate switched access services in accordance with the Contract.

**ANSWER NO. 71:**    AT&T avers that paragraph 71 states a legal conclusion, and that conclusions of law are for the Court.  Further, the contract speaks for itself and no response is required.  Any remaining allegations in paragraph 71 are denied.

72.    Plaintiffs fully performed their obligations under the Contract, except for those they were prevented from performing, those they were excused from performing, or those that were waived by AT&T's misconduct as alleged herein.

**ANSWER NO. 72:**    Denied.

73.    AT&T failed to pay RCN for interstate and intrastate switched access services in accordance with the Contract.

**ANSWER NO. 73:**    Denied.

74.    AT&T materially breached the Contract by failing to pay for the switched access services it used.

**ANSWER NO. 74:**    Denied.

75.    This Count is pleaded in the alternative, to the extent that Plaintiffs' Tariffs are determined not to apply.  In no way is this Count to be construed as an admission that the tariffs do not govern AT&T's obligations in this case.

**ANSWER NO. 75:**    AT&T admits that the Complaint purports to plead a claim in the alternative, but denies that such pleading is appropriate.

76.    Plaintiffs have been damaged in an amount to be determined at trial.

**ANSWER NO. 76:**    Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### COUNT IV (In the Alternative)
(UNJUST ENRICHMENT)

77.    Plaintiffs incorporate by reference as though fully set forth herein the allegations of preceding paragraphs of this Complaint.

**ANSWER NO. 77:**    AT&T hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

78.     For the reasons set forth above and in the *FCC Access Charge Order and FCC AT&T Calling Card Access Charges Order*, pursuant to the Contract and/or Plaintiffs' federal and state tariffs, AT&T is liable to Plaintiffs for its failure to pay interstate and intrastate access charges on interexchange traffic that AT&T delivered to Plaintiffs for termination. This Count IV is pleaded solely in the alternative, in the unlikely event the contract and tariffs are determined not to apply to every instance of AT&T's alleged conduct. In no way is this Count IV to be construed as an admission that the Contract and tariffs do not govern this case.

**ANSWER NO. 78:**   AT&T admits that the Complaint purports to plead a claim in the alternative, but it denies that such pleading is appropriate. The remaining allegations in paragraph 78 are denied.

79.     By terminating interexchange calls carried by AT&T to Plaintiffs' local telephone customers, Plaintiffs permitted AT&T's long-distance subscribers to complete long-distance calls to Plaintiffs' customers. Plaintiffs thereby conferred a benefit on AT&T.

**ANSWER NO. 79:**   Denied.

80.     AT&T understood that the termination of interexchange calls by Plaintiffs was important to AT&T's long-distance customers, and it accordingly appreciated and recognized that Plaintiffs' termination of interexchange calls carried by AT&T was a benefit to AT&T.

**ANSWER NO. 80:**   Denied.

81.     AT&T unjustly accepted and retained the benefit of Plaintiffs' call termination services without providing legally required compensation to Plaintiffs.

**ANSWER NO. 81:**   Denied.

82.     Plaintiffs have been damaged in an amount to be determined at trial.

**ANSWER NO. 82:**   Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## COUNT V
### (FRAUD)

83.     Plaintiffs incorporate by reference as though fully set forth herein the allegations of preceding paragraphs of this Complaint.

**ANSWER NO. 83:**   AT&T hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

84.     AT&T committed fraud against Plaintiffs.  Specifically, AT&T knowingly, and with the intent to defraud, made or caused to be made misrepresentations and omissions of material facts, including, but not limited to the following:

(a)     AT&T made public statements that sought to falsely minimize the volume of interexchange traffic that it was delivering to Plaintiffs and other local exchange carriers for termination without payment of the appropriate access charges;

(b)     AT&T disguised long-distance calls placed by AT&T customers to Plaintiffs' local customers by concealing, changing, causing to be concealed or changed, or otherwise misrepresenting the originating telephone number transmitted with the call, and by misrepresenting other information provided to Plaintiffs, all of which was essential to Plaintiffs' ability to properly identify calls as interstate and intrastate interexchange calls;

(c)     AT&T provided Plaintiffs with false and incorrect information as to the relative percentages of interstate long-distance, intrastate long-distance, and local calls that AT&T delivered to other carriers to be delivered to Plaintiffs; and

(d)     AT&T failed to put Plaintiffs on notice with specificity of its practice of avoiding access charges for interexchange traffic, or of the extent to which AT&T adopted and employed this practice.

**ANSWER NO. 84:**   Denied.

85.     These misrepresentations and omissions were false and misleading at the time they were made.

**ANSWER NO. 85:**   Denied.

86.     AT&T made each of these misrepresentations and/or omissions with knowledge of their falsity or recklessly without regard for their truthfulness as a positive assertion, with the intent to deceive Plaintiffs, and with the intent to induce Plaintiffs to act in the manner herein alleged.

**ANSWER NO. 86:**   Denied.

87.     Indeed, on a daily basis through the time period relevant to this Complaint, AT&T represented to its customers (but not to Plaintiffs), in bills and otherwise, that the interexchange calls that it delivered to Plaintiffs were in fact long-distance calls because it billed them long distance rates.

**ANSWER NO. 87:**   Denied.

88.     Moreover, AT&T paid at least hundreds of millions of dollars in originating access charges on the same calls that it disguised as local calls so as to mislead Plaintiffs and other LECs into believing that no terminating access charges were due.  Any claim by AT&T

that it did not know that terminating access charges were due on these calls is contradicted by the fact that it paid the originating access charges on at least many of the same calls without disputing the bills it received for originating access charges.  AT&T knew that these calls were long distance calls that were subject to access charges.  It paid the originating access charges because in most cases it had no way to conceal the nature of these calls from the LECs providing originating access.  But because it conceived of a scheme to deceive these same LECs, when they provided terminating access, into believing that these calls were local calls, it knowingly used this deceitful scheme in an effort to cheat Plaintiffs and other LECs out of hundreds of millions of dollars in terminating access charges.

**ANSWER NO. 88:**  AT&T admits that it paid some access charges to plaintiffs and other LECs.  AT&T denies the remaining allegations of paragraph 88.

89.    Plaintiffs were, in fact, deceived by AT&T's misrepresentations and omissions.

**ANSWER NO. 89:**  Denied.

90.    Plaintiffs reasonably and justifiably relied to their detriment on AT&T's misrepresentations and omissions.  Plaintiffs had no reason to believe that AT&T was engaging in trickery to avoid paying terminating access charges on such calls.  Due to AT&T's fraudulent conduct, Plaintiffs were unable to bill for (or even to detect or measure) the interexchange traffic that AT&T terminated on Plaintiffs' local networks, and Plaintiffs were unable to ascertain the volume of interexchange traffic that AT&T was delivering for termination without payment of access charges.  The truth about the scope of AT&T's unlawful conduct accordingly remained within the peculiar knowledge of AT&T, which engaged in deceptive acts calculated to mislead and thereby obtain an unfair advantage.

**ANSWER NO. 90:**  Denied.

91.    Plaintiffs were damaged as a direct and proximate result of AT&T's misrepresentations and omissions in an amount to be determined at trial.  Such damages include, but are not limited to, the following:

(a)    The access charges that AT&T avoided paying;

(b)    The additional costs to Plaintiffs since discovery of AT&T's scheme of using complex and costly methods to determine and prove the amount of access charges that AT&T avoided through its fraudulent scheme; and

(c)    The opportunity cost of the delay in receiving funds during a time period when capital was extraordinarily difficult for CLECs such as Plaintiffs to raise.

**ANSWER NO. 91:**  Denied.

## ANSWER TO PRAYER FOR RELIEF

AT&T denies that RCN is entitled to any of the relief it seeks.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

RCN's Complaint is barred because it fails to state claims upon which relief can be granted.

### Second Affirmative Defense

RCN's Complaint is barred by the doctrine of accord and satisfaction.

### Third Affirmative Defense

RCN's Complaint is barred to the extent that the claims are outside the applicable statutes of limitations.

### Fourth Affirmative Defense

RCN's Complaint is barred by the doctrines of waiver and estoppel.

### Fifth Affirmative Defense

RCN's Complaint is barred by the doctrine of laches and unclean hands.

### Sixth Affirmative Defense

RCN's state law contract and unjust enrichment claims are preempted by federal law and/or are foreclosed by state statutory law.

### Seventh Affirmative Defense

RCN's Complaint is barred because it is foreclosed and preempted by the federal statutory requirement that charges for the transport and termination of telecommunications be cost-based.

### Eighth Affirmative Defense

RCN's Complaint is barred because RCN's attempt to collect access charges for past periods constitutes an unjust, unreasonable, and discriminatory charge and practice in violation of the Communications Act and state law.

### Ninth Affirmative Defense

RCN's request for retroactive damages is barred because such retroactive recovery would be inequitable and unlawful.

### COUNTERCLAIMS OF AT&T

AT&T for its Counterclaims against RCN, states as follows:

### JURISDICTION AND VENUE

1.      These Counterclaims are filed in part to collect damages caused by illegal acts of RCN, a common carrier subject to the Communications Act of 1934, as amended by the Telecommunications Act of 1996.  These Counterclaims therefore arise under Section 206 of the Communications Act of 1934, 47 U.S.C. § 206, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and 47 U.S.C. § 207.  In addition, this Court has jurisdiction over AT&T's state-law Counterclaims pursuant to 28 U.S.C. § 1367.

2.      Personal jurisdiction is appropriate in this district because RCN has agents and property in the District of Columbia, and RCN routinely transacts business in this district.

3.      To the extent that the Court finds that venue is proper in this district regarding the claims in RCN's complaint, then venue is proper in this judicial district under 28 U.S.C. § 1391(b) because RCN has agents that transact business in the district.

## PARTIES

4.      Defendant/Counterclaim Plaintiff AT&T Corp. is a New York corporation with its principal place of business in Bedminster, New Jersey.  AT&T Corp. provides, among other things, telecommunications services throughout the United States, including in the District of Columbia.

5.      The Plaintiffs/Counterclaim Defendants are RCN Telecom Services, Inc., RCN Telecom Services of Philadelphia, Inc., RCN Telecom Services of Massachusetts, Inc., RCN-BecoCom, LLC, RCN Telecom Services of Washington, D.C., Inc., Starpower Communications, LLC, and RCN Telecom Services of Illinois, LLC,.

6.      The principal place of business of RCN Telecom Services of Illinois, LLC is 350 N. Orleans St., Suite 600, Chicago, IL 60654.  The principal place of business of all other Plaintiffs/Counterclaim Defendants is 105 Carnegie Center, Princeton, NJ 08540.

7.      RCN Telecom Services, Inc. is a Pennsylvania corporation that provides telecommunications services in metropolitan areas in Pennsylvania (except for metropolitan Philadelphia), California, and New York.

8.      RCN Telecom Services of Philadelphia, Inc. is a Pennsylvania corporation that provides telecommunications services in metropolitan Philadelphia, Pennsylvania.

9.      RCN Telecom Services of Massachusetts, Inc. is a Massachusetts corporation that is licensed to provide telecommunications services in Massachusetts.

10. RCN-BecoCom, LLC, is a Massachusetts limited liability company that provides telecommunications services in Massachusetts.

11. RCN Telecom Services of Washington, D.C., Inc. is a District of Columbia corporation that is licensed to provide telecommunications services in the District of Columbia.

12. Starpower Communications, LLC, is a Delaware limited liability company that provides telecommunications services in Washington, D.C. and the surrounding metropolitan area, including communities in suburban Maryland and Northern Virginia.

13. RCN Telecom Services of Illinois, LLC, is an Illinois limited liability company that provides telecommunications services in the city of Chicago, Illinois, and surrounding areas.

## BACKGROUND

14. RCN seeks, through this proceeding, to collect millions of dollars in access charges with respect to phone-to-phone IP telephony service and enhanced prepaid service calls that AT&T delivered to RCN during the past several years. AT&T delivered phone-to-phone IP telephony service and enhanced prepaid service calls to RCN for completion to the called parties. AT&T paid all applicable charges for RCN's completion of those calls. With respect to the phone-to-phone IP telephony service and certain of the enhanced prepaid service calls at issue, RCN now contends that AT&T should have paid higher access charges set forth in the RCN contract or RCN's federal and state access tariffs. With respect to certain other enhanced prepaid service calls at issue, RCN alleges that AT&T should have paid the higher intrastate access charge rates, and not the lower interstate access charge rates, set forth in the RCN contract or RCN's federal and state access tariffs. In particular, RCN alleges that it is entitled to collect additional access charges under the RCN contract and various state and federal access tariffs.

15.    AT&T denies that it has any liability to RCN under the RCN contract or RCN's federal and state access tariffs in connection with the phone-to-phone IP telephony service and enhanced prepaid service calls that RCN terminated.  In the event it is determined that AT&T has liability for access charges under the RCN contract or RCN's federal and state access tariffs, however, AT&T counterclaims that any contract or federal and state access tariff provisions determined to require AT&T to pay access charges on the past period phone-to-phone IP telephony service and enhanced prepaid service calls that are the subject of this lawsuit are unjust, unreasonable and discriminatory in violation of the federal Communications Act and state law.  Among other things, it would be unjust, unreasonable and discriminatory for RCN to collect additional access charges under its contract or tariffs when RCN has not issued any bills for such charges to AT&T (as required by the RCN contract or its own access tariffs as a condition precedent to payment obligations), AT&T has not refused to pay such bills, RCN has offered AT&T other services and has accepted, without protest, AT&T's payments for those different services, AT&T has relied upon these arrangements to make substantial investments in infrastructure, AT&T has complied in all material respects with the terms of the tariffs and contracts under which it exchanged this traffic with RCN, and RCN has not (until years after the fact) sought retroactive payment of access charges under its federal and state access tariffs.

16.    RCN is a common carrier, public utility and public service corporation within the meaning of the Communications Act and state law, respectively, and it acts in these capacities to the extent it provides access services to AT&T.

17.    Sections 201 and 202 of the Communications Act and analogous state statutes deem illegal all "unjust" "unreasonable" and "discriminatory" charges and practices by common carrier.  *See, e.g.*, 47 U.S.C. §§ 201, 202.  Retroactive imposition and collection of access

charges under the circumstances presented here would be unjust, unreasonable and discriminatory in violation of these laws, and the RCN contract and RCN's access charge tariff provisions are unjust, unreasonable and discriminatory to the extent that they are deemed to apply to the phone-to-phone IP telephony service and enhanced prepaid service calls at issue in this case.

## COUNT I
**(Violating 47 U.S.C. §§ 201 and 202 by Retroactive Imposition of Access Charges)**

18.     AT&T incorporates the preceding paragraphs of the Counterclaims as if set forth here.

19.     Under federal law, unjust, unreasonable and discriminatory tariff provisions are unlawful.  Moreover, it is unlawful for a common carrier to impose unjust, unreasonable or discriminatory charges or to engage in unjust, unreasonable or discriminatory practices, including unjust or unreasonable applications of its tariffs.  47 U.S.C. §§ 201, 202.  To the extent that they are deemed to require payment of access charges on the past period phone-to-phone IP telephony service and enhanced prepaid service calls at issue in this case, the contract and federal access tariff provisions that RCN asserts here are unjust, unreasonable and discriminatory and impose unjust, unreasonable and discriminatory charges in violation of the Communications Act.  Retroactive imposition of access charges under the RCN contract and RCN's federal access tariffs under the circumstances presented here would be unjust, unreasonable and discriminatory in violation of the Communications Act, and would cause substantial damage to AT&T.

<u>COUNT II</u>
**(Violating State Law Prohibitions Against Unjust, Unreasonable And Nondiscriminatory Tariffs, Charges And Practices by Retroactive Imposition of Access Charges)**

20.    AT&T incorporates the preceding paragraphs of the Counterclaims as if set forth here.

21.    Under state law, unjust, unreasonable and discriminatory contracts and tariff provisions are unlawful.  Moreover, it is unlawful for a common carrier to impose unjust, unreasonable and discriminatory charges or to engage in unjust, unreasonable or discriminatory practices.  To the extent that they are deemed to require payment of access charges on the past period phone-to-phone IP telephony service and enhanced prepaid service calls at issue in this case, the RCN contract and RCN's state access tariffs are unjust, unreasonable and discriminatory and impose unjust, unreasonable and discriminatory charges in violation of these state laws. Retroactive imposition of access charges under the RCN contract and RCN's state access tariffs under the circumstances presented here would be unjust, unreasonable and discriminatory in violation of these state laws, and would cause substantial damage to AT&T.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaim Plaintiff AT&T respectfully requests that the

Court enter judgment in its favor against RCN and that it grant AT&T the following relief:

(a)     Money damages to be proven at trial, plus prejudgment interest;

(b)     Restitution;

(c)     All costs and attorney's fees incurred by AT&T;

(d)     Preliminary and permanent injunctive relief enjoining Plaintiffs/Counterclaim Defendants from continuing to engage in the unlawful conduct complained of; and

(e)     Such other relief as the Court deems appropriate.

AT&T hereby demands a jury trial on all issues and claims so triable.


August 22, 2005                                    Respectfully submitted,

                                                   /s/ Michael J. Hunseder

                                                   _____
                                                   David M. Schiffman
                                                   Sidley Austin Brown & Wood, LLP
                                                   Bank One Plaza
                                                   10 South Dearborn
                                                   Chicago, Illinois 60603
                                                   Phone:  (312)-853-7782
                                                   Fax:     (312) 853-7036

                                                   Paul M. Zidlicky (DC Bar No. #450196)
                                                   Michael J. Hunseder (DC Bar No. #447260)
                                                   Sidley Austin Brown & Wood, LLP
                                                   1501 K Street, N.W.
                                                   Washington, DC  20005
                                                   Phone:  (202) 736-8000
                                                   Fax:     (202) 736-8711


*Attorneys for Defendants AT&T Corp. and AT&T Communications, Inc.*

DC1 790288v.1